1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANGELIKA C. CUTINO-NEIL, | ) Case No.: 1:15-cv-00522-BAM |
| Plaintiff, | ) |
| | ) **ORDER REGARDING PLAINTIFF'S** |
| v. | ) **SOCIAL SECURITY COMPLAINT** |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**INTRODUCTION**

Plaintiff Angelika C. Cutino-Neil ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") for cessation of disability insurance benefits ("DIB") under Title II of the Social Security Act.   The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[1]

The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards.  Accordingly, this Court affirms the agency's determination for cessation of benefits.

---

[1]      The parties consented to jurisdiction of a United States Magistrate Judge. (Docs. 6, 8).

**FACTS AND PRIOR PROCEEDINGS**

On February 4, 2004, the Social Security Administration found Plaintiff disabled as of November 26, 2002.  AR 17.  On June 28, 2011, the Social Security Administration determined that Plaintiff was no longer disabled as of June 1, 2011, and her benefits would stop.  AR 111-14.  Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ").  AR 145.  ALJ Christopher Larsen held a hearing on September 30, 2013, and issued an order finding that Plaintiff's disability ended as of June 1, 2011.  AR 14-25, 32-65.  Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision.  AR 8-10, 13.  This appeal followed.

**Hearing Testimony**

The ALJ held a hearing on September 30, 2013, in Fresno, California.  AR 32-65.  Plaintiff appeared and testified without counsel.  AR 34-25.  Impartial Vocational Expert ("VE") Stephen B. Schmidt also appeared and testified.  AR 34.

At the time of the hearing, Plaintiff was 46 years old.  She had received an Associate of Applied Science degree in criminal justice, along with a paralegal degree, and was taking online classes at National University to earn her bachelor's degree in criminal justice.  Plaintiff anticipated completing her degree in October 2014.  AR 38-39.

Plaintiff reported that she last worked in 2010/2011 as a supervisor at Wal-Mart, but her work attempt was unsuccessful because she was required to be on her feet all day.  AR 39-41.  In the last fifteen years, Plaintiff had a number of jobs, including as an after school childcare provider, in private-duty nursing care and as a full-time payroll clerk.  AR 41-44.

When asked why she disagreed with the doctor's conclusion that she was able to work, Plaintiff testified that he was a chiropractor who only asked her a few questions and did not conduct a physical examination.  AR 44-45.  Plaintiff explained that her disability was based on degenerative disc disease in her lower back, migraines and her knees.  Although Plaintiff had her knees replaced, she still has knee pain.  She also has problems in her back and neck and typically will have 10 migraines a month lasting four hours or more.  If she takes her medication and has fluids, she can sleep her migraines off.  AR 46-50.  Plaintiff testified that she can lift 5 to 10 pounds and can stand no

more than 10 minutes without having to shift her weight.  She thought she could work if she was allowed to sit down for 15 minutes every 30 minutes.  AR 51-54.

Following Plaintiff's testimony, the ALJ elicited testimony from the vocational expert ("VE") Stephen Schmidt.  AR 60.  The VE testified that Plaintiff's past work was classified as payroll clerk, home attendant, and supervisor, department.  AR 60.  The ALJ also asked the VE hypothetical questions.  For the first hypothetical, the ALJ asked the VE to assume a worker of Plaintiff's age, education and work experience.  This worker could perform sedentary physical exertion as the regulations define it, could never climb ladders, ropes or scaffolds, could frequently balance, stoop, kneel, crouch, crawl and climb ramps or stairs, and must avoid concentrated exposure to fumes, dusts, odors, gases and poor ventilation.  The VE testified that this worker could perform Plaintiff's past work as a payroll clerk and could perform other jobs in the economy, such as information clerk, order clerk and assembly.  AR 60.

For the second hypothetical, the ALJ asked the VE to assume a worker of Plaintiff's age, education and work experience.  This worker could lift and carry 20 pounds occasionally and 10 pounds frequently, could stand and walk somewhere between two and three hours in an eight-hour day and could sit between two and three hours in an eight-hour day, had the same postural limitations as the first hypothetical and a restriction against exposure to fumes, dusts.  The VE testified that there would be no jobs in the economy for such a worker. AR 61-62.

**Medical Record**

The entire medical record was reviewed by the Court.  AR 282-577.  The relevant medical evidence, summarized here, will be referenced below as necessary to this Court's decision.

In January 2008, Plaintiff underwent rotator cuff repair of her left shoulder.  AR 336. Nearly two years later, in November 2009, Plaintiff reported pain and neck issues.  On examination, Plaintiff's neck had some pain with lateral bend and rotation.  Her left shoulder had full motion, no impingement and excellent rotator cuff strength without weakness.  Dr. Richard Ravalin diagnosed Plaintiff with suspected cervical spine degenerative disc disease and status post rotator cuff repair, which was stable. AR 342.

On March 27, 2010, Plaintiff sought emergency room treatment for exacerbation of neck pain. She was given morphine, Phernergan and Soma. AR 398-99.

On June 1, 2010, Plaintiff sought emergency room treatment for headache, blurry vision and slurred speech. The physician suspected that some combination of Plaintiff's medication was making her speech slurred and making her tired. She was given a dose of Dilaudid. AR 393-94.

On July 7, 2010, Plaintiff sought emergency room treatment for right ankle pain. Plaintiff had low back pain and right ankle pain. She was given Reglan, morphine and Dilaudid. AR 382-83.

On July 10, 2010, Plaintiff sought emergency room treatment for her back pain, explaining that she was out of her narcotic medications and her regular doctor was out of town. Plaintiff had pain centered around her left CVA area and her left paraspinous area. Plaintiff was given Dilaudid and Zofran. AR 378-79.

On July 14, 2010, Plaintiff reported right ankle pain. On examination, Plaintiff had no swelling, no ligament or tendon abnormality, negative talar tilt and positive anterior impingement. Plaintiff was diagnosed with right ankle interior impingement. Dr. Ravalin recommended x-rays and provided a cortisone injection. AR 343. A right ankle x-ray completed on August 3, 2010, showed degenerative change about the right ankle. AR 302.

On August 4, 2010, Plaintiff reported improvement after her ankle injection. She was contemplating surgical intervention with an arthroscopy and decompression. AR 345.

On November 23, 2010, Plaintiff sought emergency room treatment for exacerbation of chronic neck and back pain. Plaintiff stated that she had been working many hours at her job, which required her to be on her feet for prolonged periods of time. On examination, Plaintiff had tenderness to both sides of the cervical, thoracic and lumbar spine. Her paraspinous muscle was very tender. Plaintiff was given a Dilaudid injection. AR 361-62.

On December 24, 2010, Plaintiff sought emergency room treatment after falling at work two days prior. Plaintiff complained of sharp pain in her lower back and was told to go to the ER for pain medication. On examination, Plaintiff's spine was in normal alignment, but she had pain to palpating the paraspinal muscles in the lumbar area. She was diagnosed with exacerbation of chronic back pain and given Dilaudid, Phenergan and a prescription for Norco. AR 358-59.

On January 5, 2011, Plaintiff sought emergency room treatment for exacerbation of her migraine headache with nausea, vomiting, light and noise sensitivity and blurred vision. Plaintiff was treated with Compazine, Benadryl and Dilaudid. AR 352-54.

On June 14, 2011, Dr. Tam Nguyen completed a consultative internal medicine evaluation. Plaintiff reported suffering from chronic back pain and joint pain, worse in her knees, neck and shoulders. Plaintiff indicated no impact on her activities of daily living. Her hobbies included reading books and watching television. She could take care of all her personal needs and housework. On a review of systems, Plaintiff denied any muscle ache or pain, weakness or numbness. She was able to walk to the exam room without any assistance, sat comfortably and could get up and off the table. On physical examination, she had no spinal or paraspinal tenderness on distraction. Straight leg raising was negative. She had normal neurological and quick mental status and memory exams. She also had normal muscle bulk and tone with strength of 5/5 in her upper and lower extremities. Dr. Nguyen diagnosed Plaintiff with chronic back pain – mild to moderate and stable; joint pain likely from osteoarthritis due to morbid obesity – moderate and stable; migraine – unsure of sub-types and needed follow-up with primary care providers; and asthma – based on history and exam she was mild persistent and controlled with albuterol PRN. Dr. Nguyen opined that Plaintiff had no limitations for standing, walking or sitting. She also had no lifting or carrying limitation, no limitation to postural or manipulative activities, and no limitation to her workplace environment or activities. AR 422-26.

On June 28, 2011, Dr. K. Quint, a state agency medical consultant, completed a Physical Residual Functional Capacity Assessment form. Dr. Quint opined that Plaintiff could lift and/or carry 50 pounds occasionally, 25 pounds frequently, could stand and/or walk about 6 hours in an 8-hour day, could sit about 6 hours in an 8-hour day and frequently could push and/or pull with her right lower extremity. She occasionally could climb ramps and stairs, but never climb ladders, ropes or scaffolds. She frequently could balance, stoop, kneel, crouch and crawl. She did not have any manipulative or visual limitations, but must avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation. AR 428-33.

On October 7, 2011, Dr. N. Haroun, a state agency medical consultant, opined that the evidence did not support the presence of any symptoms or signs to establish the presence of a severe mental impairment.  AR 498-512.

On November 22, 2011, Dr. G. Lee, a state agency medical consultant, completed a Physical Residual Functional Capacity Assessment form.  Dr. Lee opined that Plaintiff could lift and/or carry 50 pounds occasionally, 25 pounds frequently, could stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday and frequently could push/pull with her right lower extremity.  She could occasionally climb ramps or stairs, but never climb ladders, ropes or scaffolds.  She frequently could balance, stoop, kneel, crouch and crawl.  She did not have any manipulative, visual or communicative limitations, but must avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation.  AR 513-17.

On May 4, 2012, Dr. Ekram Michiel, a board certified psychiatrist, completed a consultative psychiatric evaluation.  Plaintiff reported depression, anxiety, difficulty concentrating and difficulty recalling names or items.  She had been on antidepressants since 1989, and stopped taking them in 2011 because side effects caused her not to be able to concentrate or study for her paralegal program.  Plaintiff indicated that she was able to take care of her personal hygiene and she could shop, cook and do household chores.  On mental status examination, her mood was depressed and her affect was restricted, sad.  She was oriented to person, place and date.  Her attention and concentration were intact.  Additionally, her recent memory was intact and her remote memory did not show any impairment.  Dr. Michiel diagnosed depressive disorder NOS, and believed that Plaintiff was able to maintain attention and concentration to carry out simple job instructions, but could not carry out an extensive variety of technical and/or complex instructions.  She could relate and interact with coworkers, supervisors and the general public and had no restrictions on her activities of daily living.  AR 519-22.

On May 15, 2012, Dr. R. Betcher, a state agency medical consultant, completed a Physical Residual Functional Capacity Assessment form.  Dr. Betcher opined that Plaintiff could lift and/or carry 50 pounds occasionally, 25 pounds frequently, could stand and/or walk about 6 hours in an 8-hour workday, could sit about 6 hours in an 8-hour workday and could push and/or pull without

limitation.   Dr. Betcher also opined that Plaintiff frequently could climb ramps and stairs and occasionally climb ladders, ropes and scaffolds.   She also frequently could balance, stoop, kneel, crouch, and crawl.   She did not have any manipulative, visual, communicative or environmental limitations.  AR 525-29.

On June 1, 2012, Dr. N. Haroun, a state agency medical consultant, completed a Psychiatric Review Technique form for Plaintiff's depression NOS.  Dr. Haroun opined that Plaintiff did not have any functional limitations or repeated episodes of decompensation.  AR 535-45.

On September 27, 2012, Plaintiff sought treatment at the Spine & Orthopedic Medical Center for evaluation of her lumbar spine.   Plaintiff was evaluated by Nurse Practitioner Cindy Stevens. Plaintiff described the pain in her lumbar spine as burning, numbness in bilateral legs and spasms. She rated her pain as 10 out of 10, which was relieved with rest and worsened with activity.   On examination, Plaintiff's head and neck had normal range of motion, no tenderness, normal stability and normal muscle strength and tone.   Her spine had no tenderness, normal range of motion, normal stability and normal muscle strength and tone.   A neurological and psychiatric examination was normal.   A musculoskeletal examination revealed a normal gait and pain in the lumbar spine on the left leg raise at about 30 degrees.   X-rays of the lumbar spine were grossly negative.   Plaintiff was diagnosed with lumbar spine pain and degenerative disc disease of the lumbar spine.   She was prescribed the least dose of Norco and Soma and given a Toradol injection, along with a back support and transcutaneous electrical nerve stimulator unit ("TENS unit").   A MRI was requested. Additionally, ice and a weight loss regimen were encouraged.   Dr. P. James Nugent reviewed and approved the examination and treatment plan. AR 550-54.

On October 13, 2012, Plaintiff underwent a lumbar spine MRI, which showed minimal degenerative disc disease with mild narrowing of the left L2-L3 and bilateral L3-L4 neural foramen. AR 546-47.

On October 18, 2012, Plaintiff received follow-up treatment with Dr. Nugent at the Spine & Orthopedic Medical Center after imaging studies.   On examination, Plaintiff had pain in the lumbosacral region and restricted motion.   Dr. Nugent indicated that x-rays of the lumbar spine revealed degenerative changes at multiple levels and the MRI was remarkable for multiple level

degenerative disc disease and foraminal narrowing.  Dr. Nugent diagnosed lumbar spine pain and degenerative disc disease of the lumbar spine.  Plaintiff underwent screening for osteoporosis.  She was to continue with a cane, TENS unit, back support, Soma and Norco.  Plaintiff wanted to continue with conservative care and was referred for consult and treatment of her cervical spine.  AR 555-57.

On November 5, 2012, Nurse Practitioner Stevens evaluated Plaintiff's cervical spine. Plaintiff was negative for osteopenia and osteoporosis.  Cervical spine x-rays were grossly negative with some mild degenerative changes.  She was diagnosed with cervical spine pain and degenerative disc disease of the cervical spine.  She was to undergo a MRI scan and have physical therapy.  She was to continue Soma, Norco and Vitamin D, along with her TENS unit and lumbar corset, both of which worked for her lumbar spine.  Dr. Nugent reviewed and approved the evaluation and treatment. AR 558-60.

On November 26, 2012, Plaintiff sought follow-up treatment for her lumbar spine.  Plaintiff reported benefit from a Toradol injection and was to receive another injection.  Additionally, she was to start Ibuprofen.  AR 562-65.

On November 29, 2012, Plaintiff underwent a CT of her cervical spine, which showed degenerative changes of the cervical spine with straightening of the normal lordosis and neural foraminal narrowing, degenerative disc at C4-5 and C5-6 with posterior spondylotic ridges resulting in central canal stenosis and ossification of the stylohyoid ligament bilaterally, which may be seen with Eagle syndrome.  AR 548-49.

On January 23, 2013, Plaintiff sought follow-up treatment for her cervical spine following imaging studies.  Dr. Nugent indicated that x-rays of the cervical spine revealed multiple level degenerative changes, most severe at C4-5 and C5-6, and the MRI was remarkable for degenerative changes and disc disease.  Dr. Nugent diagnosed cervical spine pain, degenerative disc disease of the cervical spine and osteopenia.  Plaintiff was to continue with the TENS unit and given an injection. Dr. Nugent outlined "conservative care," and Plaintiff was to proceed with pronex and consider cervical facet injections.  AR 566-68.

On January 28, April 15 and June 11, 2013, Plaintiff sought follow-up treatment for her lumbar spine.  She was continued on her medications, with the exception of Ibuprofen, which was

1  discontinued in June.  She also received Toradol injections to help with increased pain.  AR 569-71,

2  572-74.  Physical therapy was recommended, which Plaintiff stopped attending due to cost.  AR 572-

3  74, 575-77.

4  **Legal Standard**

5        Where the issue of continued disability or medical improvement is concerned, "a presumption

6  of continuing disability arises" in the claimant's favor once that claimant has been found to be

7  disabled. *Bellamy v. Sec'y of Health & Human Servs.*, 755 F.2d 1380, 1381 (9th Cir. 1985) (citing

8  *Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir.1983)).  The Commissioner has the "burden of

9  producing evidence sufficient to rebut [the] presumption of continuing disability." *Id.*; *see also*

10  *Murray*, 722 F.2d at 500 ("The Secretary ... has the burden to come forward with evidence of

11  improvement.").  A reviewing court will not set aside a decision to terminate benefits unless the

12  determination is based on legal error or is not supported by substantial evidence in the record as a

13  whole. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984); *accord Bellamy*, 755 F.2d at 1381.

14  **The ALJ's Decision**

15        A claimant who has been awarded disability benefits is required to undergo periodic disability

16  reviews, "to determine whether a period of disability has ended." *Flaten v. Sec'y of Health & Human*

17  *Servs.*, 44 F.3d 1453, 1460 (9th Cir. 1995); *Schweiker v. Chilicky*, 487 U.S. 412, 415, 108 S.Ct. 2460,

18  101 L.Ed.2d 370 (1988) (most disability determinations must be reviewed at least once every three

19  years); *see* 42 U.S.C. § 421(i)(1) (cases must be reviewed for continuing eligibility "at least once

20  every three years"); 20 C.F.R. § 404.1594 (rule governing termination of benefits).  To determine

21  whether a claimant continues to be disabled for purposes of receiving SSI benefits, the ALJ must

22  apply and follow the evaluation process set forth in 20 C.F.R. § 404.1594.

23        On November 1, 2013, the ALJ issued a written decision and determined that Plaintiff's

24  comparison point decision ("CPD") was dated October 20, 2015.  The ALJ concluded that Plaintiff

25  had the severe impairments of obesity, degenerative disc disease, migraine headaches, asthma and

26  status post bilateral knee replacement.  The ALJ found that medical improvement had occurred as of

27  June 1, 2011, because there had been a decrease in the medical severity of her impairments since her

28  CPD.  The ALJ determined that as of June 1, 2011, Plaintiff had the residual functional capacity

("RFC") to lift and carry 10 pounds occasionally, less than 10 pounds frequently, could stand and walk for two hours in an 8-hour day, could sit for six hours in an 8-hour day, and could frequently balance, stoop, kneel, crouch, crawl and climb ramps or stairs, but could never climb ladders, ropes or scaffolds.  Plaintiff also must avoid concentrated exposure to fumes, dusts, odors, gases and poor ventilation.  The ALJ determined that Plaintiff could not perform her past relevant work, but could perform a significant number of jobs in the national economy.  The ALJ therefore concluded that Plaintiff's disability ended as of June 1, 2011.  AR 18-24.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or

her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

## DISCUSSION[2]

Plaintiff contends that the ALJ erred by (1) failing to determine whether Plaintiff was disabled as of the date of the written decision as required by Social Security Ruling ("SSR") 13-3p and (2) improperly discrediting Plaintiff's testimony.

### 1. Relevant Time Period for Disability Status

Plaintiff first argues that the ALJ failed to adjudicate Plaintiff's disability status through the date of the decision as required by SSR 13-3p. (Doc. 15 at pp. 6-7). The Commissioner counters that the ALJ was not required to determine whether Plaintiff was disabled through the date of his decision because Plaintiff did not meet the insured status requirements as of that date. (Doc. 16 at pp. 9-10).

SSR 13-3p requires the ALJ to decide "whether the beneficiary is under a disability through the date of the [ALJ's] determination or decision." SSR 13-3p, 2013 WL 785484, at *4 (Feb. 21, 2013). Although the Commissioner argues that Plaintiff did not meet the insured status requirements as of the date of the ALJ's decision, the ALJ did not expressly state that Plaintiff was not disabled through the date of the decision, nor did the ALJ provide a reason for not determining Plaintiff's disability status through the date of the decision. The Court cannot affirm the ALJ's decision on a ground that the ALJ did not consider in making his decision. *See Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) ("[W]e cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision.").

Nonetheless, it is evident from the record that the ALJ specifically considered whether Plaintiff had been disabled from June 1, 2011, through the date of the decision. The ALJ summarized and discussed evidence spanning from 2010 through 2013 in determining Plaintiff's RFC, including Plaintiff's own testimony from September 2013. AR 20-23. Any failure of the ALJ to explicitly state that Plaintiff had not been disabled from June 1, 2011, through the date of the decision on November

---

[2] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

11

1, 2013, cannot be considered reversible error.  This is particularly true given that the bulk of the evidence and testimony discussed by the ALJ was from the period of time after Plaintiff's disability was found to have ended (AR 20-22).  *See*, *e.g.*, *Mendoza v. Colvin*, No. 1:15-cv-00975-SKO, 2016 WL 4126706, at *5 ("Court cannot find it a violation of SSR 13-3p to not use the magic words 'through the date of this decision' when virtually all the evidence and testimony mentioned and analyzed comes from the period after the Plaintiff's disability was found to have ceased").  Further, Plaintiff cites no evidence demonstrating that she became disabled at some point between June 1, 2011, and the date of the decision.  (Doc. 15 at pp. 6-7).  For these reasons, Plaintiff's argument that the ALJ committed reversible error is without merit.

### 2. Credibility

Plaintiff next contends that the ALJ failed to provide clear and convincing reasons for finding her not credible.  (Doc. 15 at pp. 7-11).  In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).  First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings and provides clear and convincing reasons for doing so. *Id.* The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence.").  Factors an ALJ may consider include: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the applicant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

At the first step of the analysis, the ALJ found that Plaintiff's "medically determinable impairments can reasonably be expected to produce her alleged symptoms."  AR 21.  At the second

1   step, however, the ALJ found that Plaintiff's statements about the intensity, persistence and limiting

2   effects of those symptoms were not entirely credible.   In so doing, the ALJ provided clear and

3   convincing reasons for finding Plaintiff not fully credible.  AR 21-23.

4           Initially, the ALJ properly considered Plaintiff's activities of daily living to be inconsistent

5   with her complaints of disabling symptoms and limitations.  AR 22.  An ALJ's credibility finding may

6   consider a claimant's daily activities which are inconsistent with allegations of disability.  *Lingenfelter*

7   *v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007).   In this instance, the ALJ considered Plaintiff's report

8   that she "watched television, took care of her personal grooming needs, did laundry, cleaned, used the

9   computer, read, prepared simple meals, drove, . . . shopped once or twice a month for 30 to 60

10  minutes, and visited with others."  AR 22, 251-58, 263-70.  The ALJ also considered Plaintiff's reports

11  that she obtained a paralegal degree and was taking full-time college classes, along with statements

12  that she could take care of her personal needs and housework and that her pain complaints had no

13  impact on her activities of daily living.  AR 22, 38-39, 422, 26, 519-22.

14          Plaintiff argues that she cannot perform her daily activities on a sustained basis, and faults the

15  ALJ for allegedly expecting her to "waste away."  (Doc. 15 at p. 9).  While it is true that "[o]ne does

16  not need to be 'utterly incapacitated' in order to be disabled," *Vertigan v. Halter*, 260 F.3d 1044, 1050

17  (9th Cir.2001), the ALJ reasonably found that Plaintiff's activities, including her ability to shop,

18  perform housework, take college classes and obtain a degree, were inconsistent with her allegations of

19  total disability.  *See Stubbs–Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (claimant's

20  "normal activities of daily living, including cooking, house cleaning, doing laundry, and helping her

21  husband in managing finances" was sufficient explanation for rejecting claimant's credibility);

22  *Thomas*, 278 F.3d at 959 (claimant's ability to perform various household chores such as cooking,

23  laundry, washing dishes and shopping, among other factors, bolstered "the ALJ's negative conclusions

24  about [her] veracity"); *see also Branham v. Colvin,* 2015 WL 8664157, at *2 (C.D. Cal. Dec. 11,

25  2015) (ALJ properly considered plaintiff's activities of daily living in assessing credibility; plaintiff

26  was able to use a computer, attend church, shop, ride in a car, cook occasionally and take care of her

27  own personal care); *Butler v. Astrue*, 2009 WL 1108504, at *4 (E.D. Wash. Apr. 24, 2009) (ALJ

28  properly discounted claimant's credibility in part because she was   taking online college courses).

1   "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting

2   the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."

3   *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012).

4          The ALJ next determined that certain of Plaintiff's allegations were inconsistent with

5   statements made to her physicians and with her conduct.   An ALJ may properly consider a claimant's

6   inconsistent statements and testimony when assessing credibility.  *Thomas*, 278 F.3d at 958–59 (ALJ

7   may consider inconsistencies either in either claimant's testimony or between her testimony and her

8   conduct when weighing the claimant's credibility); *Smolen*, 80 F.3d at 1284.   Here, the ALJ

9   considered Plaintiff's assertions she could concentrate for only 0 to 20 minutes and could walk only

10  for six to ten feet and then must rest for five minutes.   AR 22.   The ALJ determined that these

11  assertions were inconsistent with Plaintiff's reports to Dr. Michiel that she was enrolled in college

12  classes and could shop, cook and do household chores (AR 22, 519-22), and her reports to Dr. Nguyen

13  that despite her pain there was no impact on her activities of daily living and she could take care of all

14  her personal needs and housework (AR 22, 422-26).   The ALJ also appropriately reasoned that

15  Plaintiff's allegations of disability were inconsistent with her testimony not only to the Disability

16  Hearing Officer in October 2012 that she was independent in all activities of daily living and was a

17  full-time student pursuing a Bachelor's degree taking online courses (AR 133), but also her statements

18  to the ALJ that she obtained a paralegal degree and was taking full-time online classes for a bachelor's

19  degree (AR 38-39).

20         The Commissioner acknowledges that the ALJ erred in his credibility determination by finding

21  that Plaintiff told the Disability Hearing Officer that she could walk four miles. (Doc. 16 at p. 13; AR

22  22-23).   Although this finding may have been erroneous, the ALJ's credibility determination will not

23  be disturbed because there is substantial evidence to support the ALJ's other conclusions.  *See, e.g.,*

24  *Batson*, 359 F.3d at 1197 (upholding ALJ's credibility determination even though one reason may

25  have been in error).

26                          **CONCLUSION**

27         Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial

28  evidence in the record as a whole and is based on proper legal standards.   Accordingly, this Court

1   **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.

2   The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin,

3   Acting Commissioner of Social Security, and against Plaintiff Angelika Cutino-Neil.

5   IT IS SO ORDERED.

6   Dated:   **September 8, 2016**                    /s/ *Barbara A. McAuliffe*

7                                                    UNITED STATES MAGISTRATE JUDGE

15